## UNITED STATES of America

v.

**William KRASNOFF, a/k/a "William Kay", Michael Castellon, Sr., Nam Jin Park, Joseph Gross, Terry Ardrey, a/k/a "Sabino Aguirre", a/k/a "Joseph T. Ardrey", Harry C. Hermon, Hokun Yeu, Cesar Caoili, Michael Castellon, Jr. and Maureen Romanoff, Defendants.**

### No. S 79 Cr. 498 (KTD).

United States District Court, S. D. New York.

Nov. 16, 1979.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for U. S.; Peter M. Bloch, Deborah A. Batts, New York City, of counsel.

Hoffman, Pollok, Mass & Gasthalter, New York City, for defendant William Krasnoff; Jeffrey C. Hoffman, New York City, of counsel.

Barry Ivan Slotnick, New York City, for defendant Joseph Gross.

David Bernheim, New York City, for defendant Harry C. Hermon.

Bert H. Nisonoff, Forest Hills, N. Y., for defendant Hokun Yeu, M. D.

John Laurence Kase, Mineola, N. Y., for defendant Cesar Caoili.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge:

The Grand Jury, in a forty-two count indictment, filed July 9, 1979, charged the defendants, William Krasnoff, Michael Castellon, Sr., Nam Jin Park, Joseph Gross, Terry Ardrey, Harry Hermon, Hokun Yeu, Michael Castellon, Jr. and Maureen Romanoff, with conspiring to distribute certain controlled substances together with the actual distribution thereof. Thereafter, a superseding indictment was filed naming Cesar Caoili as a co-conspirator, charging him with two substantive counts of distribution and also charging the defendant Krasnoff with engaging in a continuing criminal enterprise.

The Unity Medical Center, [hereinafter referred to as "Unity"], is located at 1846 Jerome Avenue in the Bronx and offers various medical services to Medicare, Medicaid and private patients. The facility is owned and operated by William Krasnoff who also serves as its president. The psychiatric unit of Unity, managed by Michael Castellon, Sr., employed Nam Jin Park, Joseph Gross, Harry Hermon, Hokun Yeu and Cesar Caoili as staff psychiatrists. The defendant Terry Ardrey, while apparently held out as a psychiatrist by the facility, is not a licensed psychiatrist. The remaining defendants, Castellon, Jr. and Romanoff, were non-professional employees of the facility.

The defendants Krasnoff, Gross, Yeu and Hermon have individually moved to dismiss the indictment or, in the alternative, for an order suppressing various evidence seized at the facility. Four defendants, Gross, Yeu, Caoili and Krasnoff, have moved for a severance. Finally, defendants Krasnoff, Hermon and Gross seek various discovery ranging from the inspection of the Grand Jury minutes to a Bill of Particulars in order to

ascertain the precise facts underlying the instant indictment.[1] The Government opposes these motions except insofar as it has already provided the defendants with certain discovery.[2]

*The Indictment*

The superseding indictment filed herein contains forty-five counts. Count one, the conspiracy count, charges each of defendants with participating in a conspiracy to distribute certain controlled substances, to wit: tuinal and valium, for purposes other than legitimate medical treatment. More particularly, the conspiracy count of the indictment alleges fourteen separate overt acts committed in the Southern District of New York. In large part, these acts consist of various prescriptions for tuinal and valium issued by the defendants herein to agents of the Drug Enforcement Administration [hereinafter referred to as "DEA"].

Count two charges that the defendant Krasnoff, as the president and principal operator of the facility, engaged in a continuing criminal enterprise by virtue of the illegal distribution of the drugs in issue and the derivation of profits therefrom.

Counts three through forty-one and count forty-five set forth various transactions in which one or more of the professional defendants and Krasnoff issued a prescription for the drugs in issue to a given patient. The remaining counts charge the non-professional employees, the Castellons, Maureen Romanoff and William Krasnoff, with the distribution of tuinal and valium.

Krasnoff attacks the instant indictment on two grounds. First, he argues that although paragraph 2 of the conspiracy count contains an "aiding and abetting" allegation as to him, this allegation is absent from the substantive counts in which he is named. He reasons that since he was not the doctor who actually wrote the prescrip-

tions he was at best an aider and abettor in their issuance. He concludes that the failure of the indictment to expressly charge him with aiding and abetting in these substantive counts is a fatal defect warranting their dismissal as to him. Second, Krasnoff urges that counts two and forty-five of the indictment are based upon immunized testimony and, in any event, the facts alleged fail to support these charges.

■ It is clear that "a defendant may be indicted for the commission of a substantive offense and convicted solely as an aider and abettor even though not named as such in the indictment." *United States v. Pellegrino,* 470 F.2d 1205, 1209 (2d Cir. 1972), *cert. denied,* 411 U.S. 918, 93 S.Ct. 1556, 36 L.Ed.2d 310 (1973). *See also United States v. McCambridge,* 551 F.2d 865, 871 (1st Cir. 1977). Thus, the fact that Krasnoff is not specifically named as an aider and abettor does not preclude his conviction as such.

■ More importantly, however, Krasnoff labors under the misapprehension that his only potential criminal liability is as an aider and abettor. There appear to be sufficient facts alleged in the indictment which, if proven, would paint Krasnoff as a principal in the alleged substantive counts. Indeed, as the president and principal operator of the health facility, he was in charge of its operations. As such he may have been instrumental and directly involved in the issuance of the prescriptions.

Turning to Krasnoff's second attack upon the instant indictment, the salient facts are as follows:

On September 4, 1979, Krasnoff together with counsel, appeared at the office of the Assistant United States Attorney handling this matter. Before the meeting commenced the parties executed an agreement which provided:

---

1. In addition, Krasnoff has moved to strike certain language from the superseding indictment as prejudicial and seeks to reduce the number of counts brought against each of the professional defendants herein; Dr. Yeu seeks to preclude the Government from introducing any evidence at trial concerning the issuance of prescriptions by him other than those enumer-

ated in the indictment. These motions will also be resolved in the course of this Opinion.

2. The extent to which the Government has consented to the discovery requests of the several defendants is fully set forth in the Affidavit of A.U.S.A. Peter Block filed September 24, 1979.

With respect to the meeting of Peter M. Bloch, Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York ("Office") with William Krasnoff ("Client") to be held on September 4, 1979, the following understandings exist:

(1) Should any prosecution be brought or continued against Client by this Office, the Government will not offer in evidence on its direct case any statements made by Client at the meeting.

(2) Notwithstanding item (1) above: (a) the Government can use information derived from the meeting directly or indirectly for the purpose of obtaining leads to other evidence, which evidence may be used by this Office against Client at any prosecution of Client by this Office; (b) the Government may use Client's statements and all evidence obtained directly or indirectly therefrom for the purpose of cross-examination should Client testify or for the purpose of a rebuttal case against Client.

This meeting between Krasnoff, his attorney, and the prosecutor lasted some seven hours. Ten days after this meeting the Government sought and obtained a superseding indictment in which Krasnoff was charged, for the first time, with engaging in a continuing criminal enterprise.

Krasnoff contends that the above quoted agreement bestowed a limited use immunity upon him for any statements elicited at the September 4th meeting. He further reasons that since "[i]t would appear that . . . the only additional information in the Government's possession between the time of the original indictment and that of the superseding indictment were statements made by the defendant during the course of his conference with the Assistant United States Attorney", they formed the basis of the additional counts.

 Given the mere sequence of events a certain amount of suspicion clouds the superseding indictment with respect to what part, if any, the September 4th conference played in the additional charges lodged against Krasnoff. I agree with the Government that the bald statement that the conference is the only possible source of the information upon which the additional counts were based is itself insufficient to conclude that immunized statements were used before the Grand Jury. However, the safer approach is for the Court to inspect the Grand Jury minutes, *in camera,* to determine if immunized statements were used. Accordingly, I direct that the Grand Jury minutes be presented to me within five days of this Opinion for an *in camera* inspection thereof and reserve decision with respect to the additional counts until this inspection.

 Dr. Gross also requests to inspect the Grand Jury minutes or, in the alternative, for an *in camera* inspection by the Court. This request, however, must be denied. Dr. Gross has presented nothing to demonstrate that the Grand Jury proceedings were somehow irregular. Thus, the strong presumption of regularity obtains and mandates denial of Dr. Gross' request. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1957).

 The defendants Gross, Hermon and Yeu also seek dismissal of the indictment. They urge that the indictment is constitutionally infirm in that it is so vague and conclusory as to not fairly apprise the defendants of the crimes with which they are charged. In particular, they argue that the indictment fails to specify how their conduct diverted from accepted medical practice.

In testing the sufficiency of an indictment a court must insure that the indictment "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and . . . enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974).

When tested against this standard the instant indictment is more than sufficient. It is evident that each and every element of the crimes charged has been pleaded and

the indictment fairly informs the defendants of the charges against them. Moreover, the indictment is quite specific as to each of the substantive counts. It not only charges that the defendants distributed the drugs in issue other than for the purpose of legitimate medical treatment, but goes on to recite the date of a given prescription, the person to whom it was issued and the amount of the drugs prescribed.

While it is possible that the instant indictment could be made more specific by setting forth precisely how the issuance of the prescriptions at bar were for purposes other than legitimate medical treatment, this does not render the indictment defective. Indeed, to require the Government to do so would force it to fully reveal its theory of the case as well as its proof prior to trial. Suffice it to say that given the specificity with which each transaction has been alleged, it is sufficient for the indictment to alert the defendants to the fact that the prescriptions at bar were issued for purposes other than legitimate medical treatment.

*Suppression Motions*

The suppression motions are based in large part upon the conclusory statements of the defendants that the various records and documents seized by the Government, pursuant to a search warrant, were done so on something less than probable cause. Upon review, these conclusory statements are baseless and may be summarily dismissed. There is, however, one argument advanced by the defendant Krasnoff which has some, albeit facial, appeal.

It is clear that the seizure of the various records and documents in issue was based upon a search warrant issued by the Honorable Leonard Bernikow which in turn was premised upon the affidavit of Agent Gerald Franciosa of the DEA. Krasnoff contends that in addition to failing to set forth probable cause for the seizure,[3] the affidavit makes it clear that the agent exercised his independent "medical judgment" to determine that the instant prescriptions were

being issued for purposes other than legitimate medical purposes. For example, the affidavit states: "During the course of our investigation, I saw no treatment that appeared to be normal psychiatric treatment." Krasnoff concludes that since there is no indication that DEA Agent Franciosa was qualified to make that medical judgment, his affidavit is incapable of establishing probable cause for the issuance of a search warrant.

■ As previously noted, this argument has a certain amount of surface appeal. However, upon careful review of Agent Franciosa's affidavit, complaint and accompanying exhibits, it is clear that it was unnecessary for the affiant to be versed in the practice of medicine to have reason to believe that the prescriptions were issued for other than legitimate medical purposes and that the records would reflect criminal activity. There were sufficient indicia of nonmedical criminal activity upon which Agent Franciosa could base his affidavit. For example, special DEA agents went to the facility and were given pills "without the benefit of physical examination, medical history, or any other meaningful inquiry into their reasons for requiring these drugs. In all, thirteen agents made at least forty-five visits to the clinic and with one exception received the prescriptions within three to five minutes time with no physical examination, no psychiatric treatment and without meaningful inquiry into their need for such medication." See Agent Franciosa's affidavit and complaint at ¶ 2. Thus, no special medical judgment was necessary to establish probable cause in the instant case.

In addition, I find the affidavit, complaint and resulting search warrant to be sufficiently specific as to the premises to be searched and the items to be seized.

Accordingly, the suppression motions must be denied on the strength of the affidavit and complaint of Agent Franciosa and the warrant issued by Magistrate Bernikow.

---

**3.** That is to say, probable cause to believe that the records and documents were contained

within the Unity psychiatric ward and that they were part of the alleged criminal activity.

*Severance*

Defendants Gross, Yeu, Caoili and Krasnoff base their motions for severance on two grounds. First, they argue that they have been improperly joined as co-defendants in the instant action. Second, they urge that even if properly joined, it is impossible for them to receive a fair trial if forced to proceed in the context of a multi-defendant conspiracy trial. In addition, Krasnoff, by affidavit, has indicated that while he intends not to testify at his own trial, he would testify on behalf of Dr. Caoili at a separate trial.[4] Similarly, Caoili, based upon the strength of the Krasnoff affidavit, has moved for a severance arguing that he intends to call Krasnoff as a witness at a separate trial and that the proffered testimony is essential to his defense.

There can be no doubt that the several counts lodged against the various defendants were properly joined under Fed. R.Cr.P. 8. Similarly, it is evident that since the defendants are charged with having participated in the same acts or transactions alleged in the indictment, they too are properly joined in this action. The sole question, therefore, is whether the otherwise permissible joinder of offenses and defendants is so prejudicial as to foreclose a fair trial under Fed.R.Cr.P. 14.

As to defendants Gross and Yeu, there is no prejudice which even approaches an impediment to a fair trial. Their argument in favor of severance is nothing more than their expectation that they stand a better chance of an acquittal at a separate trial. This, however, is not a sufficient basis upon which to require separate trials. *United States v. DeSapio*, 435 F.2d 272, 280 (2d Cir. 1970), *cert. denied*, 402 U.S. 999, 91 S.Ct. 2170, 29 L.Ed.2d 166 (1971). Furthermore, on balance the prejudice to the public interest caused by the time, expense, delay and duplication of separate trials far outweigh any prejudice which might result to the defendants by a joint trial. *United*

States v. Aloi, 449 F.Supp. 698, 740 (E.D.N. Y.1977).

Similarly, Krasnoff's affidavit and the proffered testimony fails to establish the need for a severance. In his affidavit Krasnoff recites the following:

4. It is my present intention not to testify on my own behalf at the trial of the charges pending against me.

5. I would be willing to testify at a trial of Dr. Caoili.

6. The sum and substance of my testimony on behalf of Dr. Caoili would be that we never agreed to write prescriptions, that Dr. Caoili was to function in his capacity as a psychiatrist observing proper medical standards and prescribing medicine, if appropriate. To the best of my knowledge, Dr. Caoili did same.

On first blush, it would appear that Krasnoff's proffered testimony is truly "on behalf of Dr. Caoili" and necessary to his defense. Under such circumstances a severance may be proper in order to protect Krasnoff's constitutional right not to testify at his own trial while not depriving Dr. Caolili of a defense. However, upon closer analysis of the proffered testimony, a severance is totally unwarranted.

I turn first to the substance of Krasnoff's proffered testimony. It does not attempt to vindicate Dr. Caoili of any of the charges. Rather, it amounts to nothing more than a self-serving statement by Krasnoff to the effect that he was not a participant in the alleged conspiracy and Dr. Caoili, as an agent of the facility, was authorized only to function as a psychiatrist observing proper medical standards. It says nothing as to what Dr. Caoili, or Krasnoff, did after Caoili was hired by Unity. Neither Krasnoff nor Caoili may gain a severance under the guise of offering exculpatory evidence when in fact the proffered testimony does nothing more than deny the charges in the indictment. This was amply done by Krasnoff and Caoili by previously

---

4. Although in his moving papers, Caoili represents that two affidavits will be submitted by co-defendants stating their willingness to testify on his behalf, only one affidavit has been filed. That is the affidavit of the defendant Krasnoff.

entering pleas of not guilty to these charges.

■ More importantly, however, there is nothing in the Krasnoff affidavit indicating that if called as a witness, Krasnoff would waive his fifth amendment privilege. Thus, the proffered testimony without a concomitant waiver is not sufficient to mandate a severance. *United States v. Finkelstein,* 526 F.2d 517, 523–24 (2d Cir. 1975), *cert. denied,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976).

■ There is, however, one count which is potentially prejudicial to many of the defendants herein. I refer to count two of the indictment charging Krasnoff with engaging in a continuing criminal enterprise. Given the nature of the offense and the evidence likely to be introduced with respect thereto, it is possible that this would work to the detriment of the other defendants regardless of how many times the jury is admonished that guilt is personal. I find that the potential prejudicial spillover effect of this evidence warrants severance of this count as provided below:

At trial the government will be permitted to proceed on count one and counts three through forty-five. After the jury has reached a verdict on these counts, and if it has found Krasnoff guilty of the conspiracy or substantive counts, the Government will proceed on count two before the same jury. I am not suggesting that this procedure be followed in every case involving such a count. Rather, I am merely ruling that it be done in this case.

I turn finally to consider the miscellaneous motions made by defendants Krasnoff, Yeu and Gross.

■ Krasnoff seeks to strike the terms "massive amounts" and "Elavil" on the grounds that the terms are overly prejudicial and in any event the substance "Elavil" is not a controlled substance and therefore irrelevant to the instant charges. Both terms, however, are integral parts of the criminal activity charged by the Government. Indeed, it is evident that if the prescriptions were massive amounts it is some indication of how the prescriptions were issued for purposes other than legitimate medical purposes—i. e., for reasons other than for personal consumption. Similarly, if, as the Government contends, elavil was routinely issued in connection with these prescriptions, this too was part and parcel of the illegal prescriptions issued by the defendants. Accordingly, any resulting prejudice, which is speculative at best, is certainly outweighed by the relevance these terms play in the Government's case.

■ Krasnoff also attempts to have the number of counts in the indictment reduced urging that they are excessive and cumulative. I disagree. The many substantive counts, each representing a separate prescription, evince a course of conduct by the individuals employed at the facility. As such they are not simply cumulative and will stand.

■ Defendant Yeu seeks to prohibit the Government from introducing at trial any evidence that he dispensed tuinal and valium at times other than those charged in the indictment. He does so arguing that these other prescriptions would constitute "prior similar acts" and thus impermissible evidence to prove the criminal acts charged herein.

It is unclear at this juncture whether the Government intends to introduce evidence of transactions other than those charged in the indictment. Moreover, it is arguable that rather than evidence of prior similar acts these transactions, if introduced, were in fact part of the crimes charged herein. In any event, it is clear that these issues are properly left for trial and any ruling at this point would be premature. Thus, whether these other transactions will be admitted into evidence will be determined at trial.

Finally, having reviewed the discovery requests objected to by the Government, these objections must be sustained. The defendants are simply not entitled to this type of discovery at this juncture.

Accordingly, defendants' motions are denied except as provided above.

SO ORDERED.