UNITED STATES of America

v.

Martin B. ABRAMS, et al., Defendants.

No. 82 Cr. 80 (CES).

United States District Court,
S. D. New York.

May 13, 1982.

Scott G. Campbell, Asst. U. S. Atty., New York City, for plaintiff.

James M. LaRossa, LaRossa, Brownstein & Mitchell, New York City, for defendant Abrams.

Richard Weinberg, Shereff, Friedman, Hoffman & Goodman, New York City, for defendant Gold.

Gustave H. Newman, Newman & Adler, New York City, for defendant Siegal.

Donald Conway, Hackensack, N. J., for defendant Cotler.

Ronald DePetris, DePetris & Stewart, New York City, for defendant Pierce.

## MEMORANDUM DECISION

STEWART, District Judge:

Defendants Martin Abrams, Irving Cotler, Michael Gold, Frederick Pierce, and Leonard Siegel are jointly charged with fifteen counts of wire fraud, and one count of endeavoring to obstruct the communication of information regarding a federal criminal offense. In addition, defendant Abrams is charged with another count of obstructing a criminal investigation, and one count of tax fraud; defendant Siegel is charged with endeavoring to obstruct a grand jury investigation and one count of tax fraud; and defendant Gold is charged with two counts of tax fraud. All five defendants have filed various pretrial motions and discovery requests. A number of these requests were discussed at a pretrial conference held May 3, 1982. This Memorandum Decision disposes of all requests still outstanding after the May 3 conference, and summarizes those matters disposed of by agreement at the conference last week.

*Severance Motions*

Four of the five defendants (Cotler, Gold, Pierce and Siegel) move for severance of their cases from the joint trial of the other defendants. Defendants Gold, Cotler and Pierce assert they will suffer prejudice in a joint trial by virtue of gross disparities in the amount of evidence to be offered against them, as compared to other defendants. Defendants Gold, Pierce and Siegel also claim potential prejudice by virtue of defendant Cotler's criminal record and statements to be introduced against him which, they argue, impermissibly inculpate them. Defendant Gold also asserts that antagonistic defenses bar a joint trial. For the reasons that follow, we deny all requests for severance at this time.

Rule 14 of the Fed.R.Crim.P. provides that "if it appears that a defendant ... is prejudiced by the joinder ... of defendants ... for trial together, the court may ... grant a severance or provide whatever relief justice requires". The decision to sever is a matter left to the sound discretion of the district court. *United States v. Aloi*, 449 F.Supp. 698, 739 (E.D.N. Y.1977) (*citing, inter alia, Opper v. United States*, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954)). To warrant exercise of the court's discretion, the moving defendant must come forward with a showing that a joint trial would not merely lessen his chances of acquittal, but would in effect deny him a fair trial altogether. *Id.* (*citing United States v. Borelli*, 435 F.2d 500, 502 (2d Cir. 1970), *cert. denied*, 401 U.S. 946, 91 S.Ct. 963, 28 L.Ed.2d 229 (1971)). In determining whether severance is appropriate, a district judge should consider, among other things, the number of counts and defendants, *see United States v. Branker*, 395 F.2d 881, 887 (2d Cir. 1968), *cert. denied*, 393 U.S. 1029, 89 S.Ct. 639, 21 L.Ed.2d 573 (1969); disparities in the quantum of proof offered against the various defendants, *see United States v. Kelly*, 349 F.2d 720, 759 (2d Cir. 1965), *cert. denied*, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966); possible prejudice from the type of evidence (e.g. prior convictions) to be admitted against some of the defendants, *see United States v. Figueroa*, 618 F.2d 934, 945 (2d Cir. 1980); and the apparent relative culpability of the defendants, *see United States v. Gilbert*, 504 F.Supp. 565, 571 (S.D.N.Y.1980). The ultimate question for the district court is whether the jury will be able to "compartmentalize" the evidence presented to it, and distinguish among the various defendants in a multi-defendant suit. *United States v. Corr*, 543 F.2d 1042, 1052–53 (2d Cir. 1976).

In this case, we have examined not only the parties' motion papers, but also evidence adduced in *United States v. Stuckey*, SS 81 Cr. 0035 (CES), a previous trial of a Mego employee involved with the fraudulent sale of corporate assets alleged here. On the basis of these materials, we conclude

that the danger of prejudice to any defendant by virtue of a joint trial appears minimal at this time. This is not a case of unmanageable proportion: it has twenty counts and five defendants. While large, it is not of the scale considered in *United States v. Branker*, 395 F.2d at 882 (84 counts and eight defendants) or *United States v. Kelly*, 349 F.2d at 727 (60 counts and 20 defendants). Nor is this a case where some of the defendants are charged in only a few of the counts, *see United States v. Gilbert*, 504 F.Supp. at 566, as all of the defendants here are charged in sixteen of the twenty counts. While the government's case undoubtedly contemplates proof of differing types and degrees of involvement in the fraudulent scheme alleged, no defendant appears to be charged with so minor a role that he can be considered an alleged "silent partner", *see United States v. Corr*, 543 F.2d at 1052, or an "innocent dupe", *see United States v. Gilbert*, 504 F.Supp. at 570. The indictment alleges that defendant Gold intentionally misrepresented Mego's financial and management situation to independent auditors, and instructed a Mego accountant to conceal William Stuckey's participation in the secret cash sales of Mego merchandise. This latter allegation is supported by testimony of Stephen Weingrow, accountant for Mego, in the *Stuckey* trial. *See* Transcript of Trial Proceedings, *United States v. Stuckey*, SS 81 Cr. 0035 (CES) at 60. The indictment also alleges that defendant Pierce directed William Stuckey to transfer cash proceeds to defendant Cotler, and that Pierce himself gave cash to Cotler on another occasion. We do not, of course, express any opinion as to the guilt or innocence of these defendants as to these charges. But finding that defendants Cotler, Gold and Pierce are charged with substantial participation in the scheme to defraud, we cannot say at the present time that they will be unduly prejudiced by a trial with those who are charged with even greater roles. *See United States v. Aloi*, 449 F.Supp. at 741. Given the moderate size of the case, careful instructions should be able to neutralize any "spillover" which might occur. We ac-

knowledge defendant Cotler's argument that his status as an outsider may be a source of prejudice (as the jury could erroneously impute evidence of breaches of fiduciary duty offered against the other defendants to him), but we reject it. Marked differences among defendants have been noted to be a source of *reduced* danger of spillover. *See United States v. Papadakis*, 510 F.2d 287, 300 (2d Cir.), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975) (danger of spillover minimal in joint trial of drug sellers and purchaser). We believe a jury should be able to grasp and apply the relevant distinctions in this case.

■ We also reject the arguments of defendants Gold, Pierce and Siegel that defendant Cotler's criminal record and statements to the F.B.I. require a severance at this time. The government has indicated that it does not intend to introduce Cotler's racketeering conviction as part of its case-in-chief, but only to impeach Cotler should he take the stand. As yet, Cotler has not indicated whether he will testify or not. It is thus quite possible that the issue of Cotler's conviction will not come up at trial at all. Should Cotler testify (and should we find the conviction admissible under Fed.R. Evid. 609(a)), moreover, we are not convinced by the arguments adduced thus far that this conviction poses the "high risk of prejudice" discussed in *United States v. Figueroa*, 618 F.2d 934, 946 (2d Cir. 1980). In sum, therefore, we find the risk of prejudice from Cotler's conviction too remote to warrant severance at this time. For similar reasons, we also decline to grant defendants Gold, Pierce and Siegel severance on the basis of Cotler's statement to the F.B.I. that "all you have in your investigation is a bunch of guys who are stealing their companies blind". The present record is not sufficient to determine the statement's admissibility under Fed.R.Evid. 403. Only after that determination is made may we be faced with the statement's effect on the defendants' rights under the Sixth Amendment, *see Bruton v. United States*, 391 U.S. 123, 137, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968), and the efficacy of cautionary in-

structions in this context. *See, e.g., United States v. Wingate*, 520 F.2d 309, 314 (2d Cir. 1975). Should we then conclude that the statement is impermissibly inculpatory as those defendants, moreover, the government may choose to forego its use to avoid the need for severance. *See United States v. Figueroa*, 618 F.2d 934, 944 (2d Cir. 1980). In short, therefore, it is again unclear whether this statement will present any problem at trial at all; if problems do arise, they can be remedied by means short of severance.

■ Finally, we reject defendant Gold's argument that the possibility of conflicting defenses requires severance at this time. "[T]o obtain severance on the ground of conflicting defenses, it must be demonstrated that the conflict is so prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *United States v. Davis*, 623 F.2d 188, 195 (1st Cir. 1980) (*citing United States v. Becker*, 585 F.2d 703, 707 (4th Cir. 1978), *cert. denied*, 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 50 (1979); *United States v. Robinson*, 432 F.2d 1348, 1351 (D.C.Cir.1970); *United States v. Ehrlichman*, 546 F.2d 910 (D.C.Cir.1976), *cert. denied*, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 570 (1977)). In this case, we do not find that defendant Gold's argument that he told the truth to Abramowitz because he had nothing to hide while the other defendants lied could have this impermissibly prejudicial effect.

*Defendant Cotler's Motion to Dismiss the Wire Fraud Counts*

■ We deny defendant Cotler's motion for dismissal of the wire fraud counts as to him on the basis that he committed no acts "in furtherance" of the alleged scheme to defraud. We assume the argument challenges the legal sufficiency of Counts 1–15 of the indictment as to defendant Cotler since factual matters are not to be determined on a motion to dismiss. *See United States v. Barta*, 635 U.S. 999, 1002 (2d Cir. 1980), *cert. denied*, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981). An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *United States v. Bailey*, 444 U.S. 394, 414, 100 S.Ct. 624, 636, 62 L.Ed.2d 575 (1980). To prove a violation of 18 U.S.C. § 1343, the government must prove that the defendant was a knowing participant in a fraudulent scheme that was furthered by the use of interstate transmission facilities. *United States v. Corey*, 566 F.2d 429, 430 n.2 (2d Cir. 1977). In this case, the government has alleged the existence of a scheme to misappropriate corporate assets for the benefit of corporate executives and to bribe others, and alleged that on fifteen specific occasions, interstate telephone calls were made in furtherance of this scheme. The government further alleges defendant Cotler's knowing participation in this scheme, evidenced by his acceptance of cash from William Stuckey on two separate occasions for the purpose of bribing others. We reject Cotler's argument that the acceptance of misappropriated cash for the purpose of bribing others "is not even arguably in furtherance of a scheme to defraud others". Memorandum of Law Submitted in Support of Defendant Irving Cotler's Pretrial Motions at 30. Whether any of these allegations will be found as fact by the jury is a question that awaits trial. What is relevant to this stage of the proceedings, however, is that the indictment states the elements of the offense of wire fraud as to defendant Cotler, and informs him of the charge against which he must defend. As the indictment sufficiently identifies the offense charged, it presumably meets the second test of sufficiency: protection against double jeopardy. Accordingly, we decline to dismiss the wire fraud count as to defendant Cotler on this basis.

■ We also deny defendant Cotler's motion to dismiss on statute of limitations grounds. "The fact that a scheme may extend back beyond the limitation period

does not outlaw an offense committed in furtherance of that scheme within the period." *United States v. Andreas*, 458 F.2d 491 (8th Cir.), *cert. denied*, 409 U.S. 848, 93 S.Ct. 54, 34 L.Ed.2d 89 (1972) (*quoting United States v. Gross*, 416 F.2d 1205, 1210 (8th Cir. 1969) (Blackmun, J.)). In this case, the fifteen phone calls alleged to have been made in furtherance of the scheme to defraud are all within the limitations period. This action is therefore timely as to defendant Cotler, despite the fact that the indictment also alleges that he committed other acts in furtherance more than five years prior to the filing of the indictment.

*Defendant Abrams' Motion to Dismiss Obstruction of Justice Counts*

Defendant Abrams moves to dismiss Counts 16 and 17 of the indictment (the obstruction of justice counts) for failure to state the "essential facts constituting the offenses charged" as required by Fed.R. Crim.P. 7(c). Abrams argues that the lack of factual specificity in these counts violates the Sixth Amendment's guarantee that "in all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . .". While we believe that the legal insufficiency of these counts is more properly traced to the strictures of the Fifth, rather than the Sixth Amendment to the Constitution, we agree that these counts are legally insufficient. Accordingly, we grant defendant Abrams' motion to dismiss these counts.

Rule 7(c) of the Federal Rules of Criminal Procedure requires that the indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged". This requirement performs three constitutionally required functions. First, it fulfills the Sixth

Amendment guarantee cited by defendant Abrams to be informed of the "nature and cause of the accusation". Second, it prevents any person from being "subject for the same offense to be twice put in jeopardy of life or limb" as required by the Fifth Amendment. Finally, it preserves the protection given by the Fifth Amendment from being held "to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury". *United States v. Silverman*, 430 F.2d 106, 110 (2d Cir. 1970), *cert. denied*, 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971). This third constitutional consideration is the source of several well established principles of federal criminal procedure, including the prohibition against the amending of indictments except by resubmission to the grand jury, and the bar against the "curing" of defective indictments by issuance of a bill of particulars. The rationale for these rules is clear: they guard against the possibility, however slight, that "a defendant could . . . be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him". *Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962). Similarly, the Indictment Clause of the Fifth Amendment also requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury. *United States v. Agone*, 302 F.Supp. 1258, 1261 (S.D.N.Y. 1969). It is thus the Indictment Clause of the Fifth Amendment that leads us to conclude that the counts in question must be dismissed.

■ Counts 16 and 17[1] track the language of the statute in question[2] and allege

---

1. Count 16 of the indictment reads:

AN ENDEAVOR TO OBSTRUCT THE COMMUNICATION OF INFORMATION REGARDING A FEDERAL CRIMINAL OFFENSE

From on or about May, 1979, up to and including February 27, 1980, in the Southern District of New York and elsewhere, the defendant, MARTIN B. ABRAMS, and others to the Grand Jury known and unknown, did un-

lawfully, willfully, knowingly, and corruptly endeavor by means of bribery and misrepresentation to obstruct, delay, and prevent persons from communicating information relating to a violation of federal criminal statutes of the United States to federal criminal investigators (Title 18, United States Code, Sections 1510 and 2).

that the offenses occurred over nine and twenty-four month periods, respectively, "in the Southern District of New York and elsewhere". The counts provide no other factual specifics. They do not name the persons alleged to have been prevented from communicating to federal authorities; they do not identify the criminal statutes to which the obstructed information pertained. Nor do they detail any of the alleged acts of bribery or misrepresentation, or identify with any precision the criminal investigators involved. While the absence of any one of these factual elements alone might not be a basis for finding the counts insufficient, *cf. United States v. Haas*, 583 F.2d 216, 221 (5th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1788, 60 L.Ed.2d 240 (1979) (indictment under 18 U.S.C. § 1503 not invalid for failure to specify nature of "information" communicated to grand juror in effort to influence); *United States v. Haldeman*, 559 F.2d 31, 126 (D.C.Cir.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977) (indictment under 18 U.S.C. § 1503 not invalid for failure to specify all means by which defendants endeavored to obstruct justice); *United States v. Weiss*, 491 F.2d 460, 466 (2d Cir.), *cert. denied*, 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974) (indictment under 18 U.S.C. § 1503 that alleged corrupt endeavor to obstruct justice by failure to produce "documents" subpoenaed by grand jury investigating specified fraud scheme not invalid for failure to allege corrupt conduct more

specifically), the effect of all these factors considered together requires that these counts be dismissed. *Cf. United States v. Tomasetta*, 429 F.2d 978, 980–81 (1st Cir. 1970) (total effect of loansharking indictment's failure to allege means by which threats communicated, failure to specify with precision location of alleged offense, and failure to name victim "make it unfair to require the defendant to answer this charge".). We are mindful of the precept that indictments "which track the language of a statute and, in addition, do little more than state time and place in approximate terms" are generally legally sufficient. *United States v. Salazar*, 485 F.2d 1272, 1277 (2d Cir. 1973), *cert. denied*, 415 U.S. 985, 94 S.Ct. 1579, 39 L.Ed.2d 882 (1974). We note however, that the indictments that have been upheld under this precept have been more factually specific than the counts considered here. *See, e.g., United States v. Bernstein*, 533 F.2d 775, 786 n.8 (2d Cir.), *cert. denied*, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976) (indictment under 18 U.S.C. § 1010 specifies time and place of transaction, document alleged to contain false statements, and particular property document concerned); *United States v. Trotta*, 525 F.2d 1096, 1099 (2d Cir. 1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976) (indictment under 18 U.S.C. § 1951 specifies dates, approximate location, amounts of alleged extorted payments and identity of payor); *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d

---

Count 17 reads:

ANOTHER ENDEAVOR TO OBSTRUCT THE COMMUNICATION OF INFORMATION REGARDING A FEDERAL CRIMINAL OFFENSE

From on or about February 27, 1980, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, the defendants, MARTIN B. ABRAMS, IRVING COTLER, MICHAEL GOLD, FREDERICK C. PIERCE, and LEONARD S. SIEGEL, and others to the Grand Jury known and unknown, did, unlawfully, wilfully, knowingly and corruptly endeavor by means of misrepresentation to obstruct, delay, and prevent persons from communicating information relating to a violation of criminal statutes of the United States to the United States Attorney's Office, criminal investigators of the Department of Justice, and to other federal crimi-

nal investigators (Title 18, United States Code, Sections 1510 and 2).

2. 18 U.S.C. § 1510 ("Obstruction of criminal investigations") provides:

(a) Whoever willfully endeavors by means of bribery, misrepresentation, intimidation, or force or threats thereof to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator; or

Whoever injures any person in his person or property on account of the giving by such person or by any other person of any such information to any criminal investigator— Shall be fined not more than $5,000, or imprisoned not more than five years, or both. . . .

Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975) (conspiracy indictment states time and place of crime and specifies seventeen overt acts). The counts in question here state *no* more than "time and place in approximate terms" and the scope of that approximation is broad indeed. We find this is not sufficient under the Fifth Amendment. *See United States v. Cecil*, 608 F.2d 1294, 1296–97 (9th Cir. 1979). Accordingly, we dismiss counts 16 and 17 of this indictment. Although defendant Siegel did not raise the point in his pretrial motions, it seems to us that Count 18 suffers from the same defect as the two counts that precede it.[3] Since the sufficiency of an indictment is a jurisdictional prerequisite in cases in which an indictment is required, *see* Note, Indictment Sufficiency, 70 Colum.L. Rev. 876, 888 (1970), we raise this point on our own motion, and dismiss this count as well.

*Defendant Cotler's Motion to Suppress and for a Franks Hearing*

■ Defendant Cotler moves to suppress conversations intercepted pursuant to a wiretap order issued April 3, 1979 in the United States District Court for the District of New Jersey, and documents obtained pursuant to search warrants issued in the same court April 18, 1979. Cotler argues that the affidavits upon which the order and warrants issued were insufficient to support a finding of probable cause, and also that the search warrants were impermissibly broad. Defendant Cotler moves in the alternative for a hearing under *Franks v. Delaware*, 438 U.S. 154, 158, 98 S.Ct. 2674, 2677, 57 L.Ed.2d 667 (1978) to challenge the veracity of the affidavits submitted in application for the wiretap order and search warrants. We deny both motions.

■ In reviewing the sufficiency of affidavits submitted in support of the issuance of a search warrant, the papers are to be read as a whole, in a common sense fashion rather than technically. *United States v. Kahan*, 572 F.2d 923, 929 (2d Cir.), *cert. denied*, 439 U.S. 833, 99 S.Ct. 112, 58 L.Ed.2d 128 (1978) (*quoting United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)). A finding of probable cause made by the judge or magistrate who reviewed the documents is entitled to deference by the reviewing court. *United States v. Perry*, 643 F.2d 38, 50 (2d Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981). These two principles lead us to reject defendant's argument that the inclusion of arguably irrelevant material in the affidavit supporting the application in question ("the Hersh affidavit") renders that affidavit legally insufficient. Rather than focusing on isolated portions of the affidavit to determine its sufficiency as the defendant would have, we look to the document as a whole to see if probable cause was shown.

The bulk of the government's evidence of probable cause consisted of information received from Joseph Szapor, a cooperating government witness involved in the Northern New Jersey trucking industry for over twenty years. Hirsch Aff. at 31. Szapor, who had previously furnished reliable information to the F.B.I. on at least ten other occasions, *id.*, related to the F.B.I. that defendant Cotler had been introduced to him in February 1976 as the "Local 560 repre-

---

**3.** Count 18 of the indictment reads:

AN ENDEAVOR TO OBSTRUCT A GRAND JURY INVESTIGATION

From on or about June 16, 1980, and continuing up to the date of the filing of this Indictment, a Grand Jury of the United States District Court for the Southern District of New York had commenced and was conducting an investigation to determine whether violations of criminal statutes of the United States had been committed in the Southern District of New York and elsewhere.

From on or about June 16, 1980, up to and including the date of the filing of this indictment in the Southern District of New York and elsewhere, the defendant, LEONARD S. SIEGEL, and others to the Grand Jury known and unknown, did unlawfully, wilfully, knowingly, and corruptly endeavor to influence, obstruct and impede the due administration of justice by misleading a prospective grand jury witness and endeavoring to cause him to give false testimony to the aforesaid grand jury (Title 18, United States Code, Sections 1503 and 2).

sentative who would make monthly pick ups of payoff monies from Szapor". *Id.* at 33. At this meeting, Szapor reported, Cotler gave Szapor his business telephone number should he have any questions concerning the payoff arrangements. *Id.* Szapor further reported making monthly payoffs to Cotler from that meeting until the time of Szapor's interview with F.B.I. agents. *Id.* Szapor told the F.B.I. that meetings for the purpose of payoff payments were routinely scheduled by telephone; a review of telephone billing records by the F.B.I. corroborated this report. *Id.* at 35. A consensual tape recording of a conversation between Szapor and Cotler made on September 6, 1978 included references to payoff money and Tony Provenzano, President of Local 560 of the International Brotherhood of Teamsters. *Id.* at 36.

Defendant Cotler argues that the information provided by Mr. Szapor cannot constitute probable cause because it fails the requirements set out in *Aguilar v. Texas*, 378 U.S. 108, 114–115, 84 S.Ct. 1509, 1513–14, 12 L.Ed.2d 723 (1964) that both the underlying circumstances of the informant's knowledge and the trustworthiness of the informant be demonstrated before his information be credited. We disagree. Since Szapor's reports were based on his own personal observations, the underlying circumstances of his knowledge are clear and presumably reliable. *United States v. Rollins*, 522 F.2d 160, 164 (2d Cir. 1975), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976). The fact that Szapor was a participant in the very crime at issue, was, by itself, sufficient to establish the trustworthiness of his disclosures. *United States v. Lace*, 669 F.2d 46, 49 (2d Cir. 1982). Moreover, the affidavit contained sufficient indices of Szapor's reliability. It stated Szapor had previously provided reliable information to the government, Hersch Aff. at 31, and it contained ample evidence of independent corroboration, *e.g., id.* at 36 (consensually recorded conversation concerning payoffs), and 35 (corroborating telephone bill records). *See United States v. Rollins*, 522 F.2d at 165 (informant's story may be corroborated by verification of "in-

nocent aspects" of the story). Under these circumstances, we find the government did present the United States District Court judge of the District of New Jersey with an affidavit warranting the issuance of the wiretap order on April 3, 1979.

██ As we find that the initial Hersh affidavit was sufficient, we need not address defendant's argument that the search warrants issued on the basis of supplemental information obtained through the wiretaps should be suppressed as fruits of a poisonous tree. We reject defendant's second argument that these warrants were so impermissibly broad as to constitute "general warrants". The warrants in question uniformly authorized searches for the following property:

> U.S. currency and commercial paper; safety deposit keys and rental receipts; documents relating to the illegal acquisition, transfer, concealment, and disposition of payoff funds and of commissions derived therefrom, including particularly bank deposit records, invoices, bills, receipts, and account ledgers; personal telephone and address notebooks, and other documents showing the identities of persons participating in the described offenses; and other documents and items (particularly a blue attache case)—which are contraband, fruits, instrumentalities or evidence of violations of 18 U.S.C. § 1341 (mail fraud incidental to cash—generation), 1952 (travel act—commercial bribery), § 1962 (racketeering activity—payoffs for labor peace) and 29 U.S.C. § 186 (Taft-Hartley payments) as described in the attached and incorporated affidavit.

Given the nature of the offense under investigation, it was proper and necessary for the searching officer to use generic terms to describe the items sought. *United States v. Scharfman*, 448 F.2d 1352, 1355 (2d Cir. 1971), *cert. denied*, 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972). The use of the qualifying phrase "which are contraband, fruits and instrumentalities or evidence" of the violations specified, moreover adequately particularized the item to be seized. *Id.*

Nor do we find the description of the areas to be searched overly broad.[4] Defendant has made no showing that there were "identifiable subunits" within his residence or office that required narrowing the scope of the search. *See Nat'l City Trading Corp. v. United States*, 635 F.2d 1020, 1024–25 (2d Cir. 1980). In the absence of such, search of the entire residence or office was justified, considering the nature of the items sought. *See id.*

■ We also deny defendant Cotler's request for a *Franks* hearing, *see Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to challenge the veracity of the warrant affidavit. Defendant asserts that Hersh's affidavit was intentionally or recklessly false when it averred that Joseph Szapor had been a confidential informant for the F.B.I. "intermittently for the past 20 years", as Szapor testified in the trial of *United States v. Provenzano*, 80 Cr. 315 (HLS), that he had been an informant for only "a couple of years". Additional testimony excerpted by the government casts considerable doubt as to whether Hersh's statement was false or not. *See* Aff. of Scott Campbell, Ex. I. Even assuming, however, that Hersh's statement was false, and recklessly so, the particular statement attached was not essential to the finding of probable cause. As discussed previously, the reliability of Szapor was established by the fact of his participation in the offense in question. Corroboration of other facts he supplied, moreover, further indicated his reliability. "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks v. Delaware*, 438 U.S. at 171–177, 98 S.Ct. at 2684–87. Accordingly, defendant's motion for a hearing is denied.

*Request for Inspection of Grand Jury Minutes*

■ Defendant Michael Gold requests the court to order the disclosure of instructions given to the grand jury on the elements of the offenses charged; in the alternative, defendant Gold moves for an *in camera* inspection by the court of the instructions. Defendant Gold bases his request upon the refusal of the Assistant U. S. Attorney to provide copies of "the charge to the grand jury" and any colloquys between the grand jury and any Assistant U. S. Attorneys upon defendant Gold's request. This, Gold argues, raises "a substantial question as to whether defendant Gold was indicted by a grand jury with knowledge of the applicable law". Defendant Michael Gold's Memorandum of Law in Support of Pretrial Motion at 16. Defendant Siegel also moves for an *in camera* inspection of the grand jury minutes, on the grounds that the Organized Crime Division of the Justice Department declined to approve a racketeering charge sought by the United States Attorney for the Southern District one week before the filing of the indictment. Defendant Siegel argues that the government's intention to charge a violation of R.I.C.O. may have led to the introduction of evidence or the making of statements that prejudiced the grand jury in its deliberations, even though the R.I.C.O. charges had been excised by the time of the voting of the indictment. We deny both requests.

■ It is well established that unless a defendant presents a particularized need, claims a gross and prejudicial irregularity influencing the grand jury, or presents some similar compelling necessity, inspection of the grand jury testimony is to be

---

4. The search warrants authorized officers to search the following locations:

The office of Irving Cotler, located in the premises d/b/a Cober Transfer Corporation and Bargel Leasing Company, Inc., 91 East Peddie Street, Newark, New Jersey. (Particularly the desk, file cabinets and storage facilities under the personal control of Irving Cotler.)

Residence of Irving Cotler located at 136 Summit Street (whole house), Englewood, New Jersey

The automobile driven by Irving Cotler, being a 1979 4-door yellow Lincoln Continental bearing a current New Jersey license 837 JUJ.

The person of Irving Cotler (W/M/DOB:2–4–12).

denied. *United States v. Aloi*, 449 F.Supp. 698, 738 (E.D.N.Y.1977) (*citing United States v. Dioguardi*, 332 F.Supp. 7, 20 (S.D. N.Y.1971). A court will not review the sufficiency or legality of the evidence presented to a grand jury, moreover, absent a showing of a particularized need. *Id.* (*citing United States v. Garcia*, 272 F.Supp. 286, 288 (S.D.N.Y.1967)). In this case, defendant Gold has clearly failed to meet the requirement of establishing a particularized need. The Assistant United States Attorney's refusal to provide transcripts of the grand jury's proceedings upon Gold's request was quite proper in light of the general rule of secrecy that shrouds that body's proceedings. *See* Fed.R.Crim.P. 6(e)(2). Defendant Gold has thus presented nothing to demonstrate that the grand jury's proceedings were irregular, and his request must be denied. *See United States v. Krasnoff*, 480 F.Supp. 723, 727 (S.D.N.Y.1979).

Nor do we find that defendant Siegel has made a sufficient showing of irregularity to warrant our review of the grand jury's proceedings. Defendant Siegel's suggestion that unrelated evidence or improper remarks may have prejudiced the grand jury is, of course, pure speculation. Such a showing is generally not sufficient to lift the veil of secrecy that surrounds grand jury proceedings. *United States v. Aloi*, 449 F.Supp. at 739 (*citing United States v. Permisohn*, 339 F.Supp. 52, 55 (S.D.N.Y. 1971) and *United States v. Crisona*, 271 F.Supp. 150, 159 (S.D.N.Y.1967)). Although in certain cases, a suspicious "sequence of events" may suffice to move a court to inspect grand jury minutes, *United States v. Krasnoff*, 480 F.Supp. at 727, we do not find that defendant Siegel has established that this is such a case. The government argues that since the racketeering charge initially contemplated was predicated upon precisely the same wire fraud and obstruction offenses that are charged in the instant indictment, the danger of extraneous evidence prejudicing the grand jury would have been minimal. *See* Government's Memorandum of Law in Opposition at 58. While we find this argument persuasive, we need not rest our decision on this point alone. It seems to us that in this case the grand jury could have been no more influenced (and the defendant no worse off) than if the government *had* sought an indictment on the R.I.C.O. count, and the grand jury had voted a no bill on the R.I. C.O. count and returned the others. Certainly in that case, the defendant would have no grounds to claim the entire indictment void due to prejudicial extraneous evidence. In that case, as in this case, the presumption of the regularity of the grand jury's proceedings would lead one to assume that the grand jury understood the elements of all the offenses charged, and returned an indictment on only those counts for which it found sufficient probable cause. Thus, possible exposure to evidence of other crimes, or even mention of such, cannot be a sufficient ground to warrant a complete review of the grand jury's minutes. While the inflammatory potential of references to organized crime before a grand jury has been raised in the past, it has rarely resulted in the dismissal of the indictments in question. *See, e.g., United States v. Polizzi*, 500 F.2d 856, 887–8 (9th Cir. 1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *United States v. Riccobene*, 451 F.2d 586, 587 (3d Cir. 1971). We conclude, therefore, that defendant Siegel has not shown either a "gross or prejudicial irregularity" influencing the grand jury, *United States v. Aloi*, 449 F.Supp. at 698, or even a "certain amount of suspicion cloud[ing]" the indictment, *United States v. Krasnoff*, 480 F.Supp. at 727.[5] Accordingly we deny his request for an *in camera* inspection.

5. We thus distinguish this case from *United States v. Krasnoff*, 480 F.Supp. 723 (S.D.N.Y. 1979), in which Judge Duffy ordered an *in camera* inspection upon a defendant's claim that the government had used immunized statements to obtain additional counts against the defendant by the grand jury. *Krasnoff* involved the use of evidence arguably tainted by a prior grant of immunity—a type of evidence that federal courts are directed to scrutinize with particular care. *See, e.g., United States v. Nemes*, 555 F.2d 51, 55 (2d Cir. 1977). In this case, defendant Siegel makes no argument that

*Defendant Abrams' Motion for Pretrial Disclosure of Statements of Agents and Coconspirators*

 Defendant Abrams requests an order directing the government to disclose any hearsay statements it plans to introduce at trial pursuant to Fed.R.Evid. 801(d)(2)(C), (D) or (E). We deny this request. The reasoning apparently underlying Abrams' request is as follows: The defendant has a right to impeach co-conspirator declarants under Fed.R.Evid. 806; *Brady v. Maryland* requires that the government disclose information relevant to impeachment; therefore, the government must disclose the impeachable statements it plans to introduce pursuant to Rule 801(d)(2). *Brady*, however, does not require the government to disclose information pertaining to the credibility of witnesses before that witness testifies. *See United States v. Mitchell*, 372 F.Supp. 1239, 1257 (S.D.N.Y.), *appeal dismissed sub nom. Stans v. Gagliardi*, 485 F.2d 1290 (2d Cir. 1973).

### Defendants' Brady Motions

Defendants Cotler, Siegel and Abrams move for orders directing the government, pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to produce all information that tends to exculpate them. We note the government acknowledges its obligations under *Brady* and warrants it will undertake them in good faith. *See* Response to Defendants [sic] Request for Bills of Particulars, Ex. A at 12, 17. Accordingly, we see no reason to so order the government's compliance at this time.

### Defendants' Requests for Bills of Particulars

Finding the government's response to the defendants' requests for particulars on Count 1 through 15 adequate, we decline to order any further response from it. Counts 16, 17 and 18 having been dismissed, the requests for particulars on those matters are moot. We also find the government's responses to requests concerning Counts 19 and 20 adequate, and thus decline to order

the grand jury heard evidence tainted in this

any further particularization on these points.

*Matters Disposed of at May 3, 1982 Conference*

Discussion at the conference held on May 3, 1982 resulted in the following agreements:

| | |
|---|---|
| 1. Abrams', Pierce's and Siegel's Motion for Order Directing Government to provide Its Witness List: | The government has agreed to provide at least 24 hours notice of the witnesses it plans to call at trial, unless special circumstances (communicated to the court) make such disclosure undesirable. |
| 2. Abrams' Request for Pretrial Disclosure of Impeachment Evidence (Paragraph 12 of Abrams' Notice of Omnibus Motion): | The government agrees to provide the criminal records of its witnesses and details of any agreements such witnesses might have with the government at the time it provides notice that such witness will be testifying. |
| 3. Defendant Abrams' Motion for Pretrial Disclosure of the Government's Intention to Introduce Hearsay Statements Under Fed.R.Evid. 803(24) and 804(b)(5): | The government acknowledges its obligations under Fed.R.Evid. 803(24) and 804(b)(5) to provide advance notice of an intention to offer statements under these exceptions, and the particulars thereof. |
| 4. Defendant Siegel's Motion for Pretrial Disclosure of 3500 Material: | The government agrees to provide 3500 statements at least one full day before its witnesses take the stand, again unless special circumstances obtain. |
| 5. Defendant Abrams' Request for Pretrial Disclosure of Similar Act Evidence: | The government has indicated it does not intend to introduce any similar act evidence. |
| 6. Abrams' Request for Pre-Marking of Government's Exhibits: | Although no specific timetable was set at the conference, the government has agreed it will indicate what exhibits it will be offering prior to trial. |
| 7. Abrams' and Siegel's Request for Information Concerning Electronic Interceptions or Consensual Recordings (Abrams' Notice of Omnibus Motion Requests Nos. 6 and 7; Siegel's Notice of Motion Request No. 8): | The government has agreed to provide the requested information, but is unable to do so until its all agency check is completed. |

manner.

8. Abrams' Request for a *Bryant* hearing: — The government will be furnishing the court next week recordings to be offered at trial to determine their audibility and admissibility.

9. Defendants' Request to Make Additional Motions: — As discussed at the conference, these requests are granted.

## Remaining Matters

The remaining items requested by defendants may be disposed of summarily.

### 1. Defendant Abrams

Req. No. 2 (discovery pursuant to Fed.R.Crim.P. 16(a)(1)(B): — It appears government is adequately complying with its obligations under this rule.

Req. No. 3 (discovery pursuant to Fed.R.Crim.P. 16(a)(1)(D)): — Inasmuch as the government's letter of February 17, 1982, *see* Aff. of Paul B. Bergman at ¶ 9, may contain some ambiguity, we grant this request to the extent provided for in Fed.R.Crim.P. 16(a)(1)(D).

Req. No. 4 (request for copies of statements by defendant and co-defendants): — It appears the government has complied with this request. *See* Aff. of Paul B. Bergman, Ex. B.

Req. No. 9 (information concerning search warrants): — It appears the government has complied with this request. *See* Government's Memorandum of Law in Opposition to Defendants' Motions at 43.

### 2. Defendant Cotler

Req. No. 7 (suppression of all verbal statements pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)): — As defendant Cotler provides no argument on *this point in his brief, the* request is denied.

Req. No. 9 (directing government to preserve documents): — We assume the government recognizes its responsibilities in this regard.

### 3. Defendant Siegel

Reqs. Nos. 2, 3 (discovery under Fed.R.Crim.P. 16(a)(1)(A) and 16(a)(1)(C)): — It appears government has complied with these requests.

Req. No. 4 (discovery under Fed.R.Crim.P. 16(a)(1)(D)): — *See* Abrams' Req. No. 3.

Req. No. 7 (concerning searches and seizure): — It appears the government has complied with this request. *See* Government's Memorandum of Law in Opposition to Defendants' Motions at 43.

## Government's Motion for Reciprocal Discovery

We grant the government's motion for reciprocal discovery under Fed.R. Crim.P. 16(b)(1)(A) and (B). We also grant its request for defense witness statements under Fed.R.Crim.P. 26.2. Recognizing the similarities between 26.2 and 18 U.S.C. § 3500, we presume the defendants will agree to produce its 26.2 statements at least 24 hours prior to their witnesses' testimony, except in cases in which such pre-testimony disclosure may cause prejudice to the defendants. As we have received no opposition to the government's fourth request concerning the preservation of notes of interviews with prospective defense witnesses, we grant this request as well.

SO ORDERED.