**UNITED STATES of America,**

v.

**Leo Laszlo SUGAR, Victoria Vamos, Gloria Reinhardt, and Nandor Retek, Defendants.**

**No. SS 84 Cr. 629 (SWK).**

United States District Court,
S.D. New York.

April 3, 1985.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by David S. Hammer, Asst. U.S. Atty., New York City, for the U.S.

Louis R. Rosenthal, by John M. Leventhal, Brooklyn, N.Y., for defendant Sugar.

Lorraine Backal, New York City, for defendant Reinhardt.

Louis E. Diamond, Staten Island, N.Y., for defendant Vamos.

Kenneth P. Lowenthal, Brooklyn, N.Y., for defendant Retek.

## MEMORANDUM OPINION AND ORDER

KRAM, Distict Judge.

The above-captioned action is before this Court upon defendants's omnibus motions for varied relief. For the reasons stated below, the motions are denied.

### —BACKGROUND—

Dr. Leo Laszlo Sugar is a medical doctor licensed to practice medicine in the State of New York. He maintains medical offices at 400 East 77th Street in Manhattan. Gloria Reinhardt was Dr. Sugar's receptionist. Victoria Vamos and Nandor Retek also worked for Dr. Sugar in his medical offices.

Dr. Sugar specializes in the treatment of obesity and in weight reduction ("bariatrics"). During the course of this practice, Dr. Sugar dispensed appetite suppressant medication ("anorectics") to his patients at his medical offices. Reinhardt, Vamos, and Retek, as part of their employment duties, assisted in the distribution of these anorectics.

The anorectics dispensed in huge quantities at Dr. Sugar's offices include phendimetrazine, a Schedule III controlled substance, and phentermine, a Schedule IV controlled substance, both of which are stimulants. These drugs may lawfully be dispensed directly to patients in the course of a medical practice.

On May 25, 1983, William Hanlon, a Special Agent of the Drug Enforcement Agency ("DEA"), visited Dr. Sugar's offices, posing, under the alias Robert Connolly, as a prospective patient who wanted to lose weight. Hanlon was interviewed by a member of Sugar's staff, "Alex," and asked to fill out a medical questionnaire. He was then weighed. Alex recorded the weight on an index card with Hanlon's assumed name on it, and placed it, with others like it, in a large box on his desk. Another member of Sugar's staff, "Vicki," took Hanlon's blood pressure and then introduced him to Dr. Sugar. Dr. Sugar listened to Hanlon's heartbeat through a stethoscope for approximately five seconds and asked him to breathe deeply once. Dr. Sugar then handed Hanlon a vial, which contained 36 phendimetrazine tablets, and asked for $40, telling Hanlon that subsequent visits would cost $20.

On June 1, 1983, Hanlon returned to Sugar's offices. Alex gave Hanlon his index card and introduced him to another member of Sugar's staff, "Gloria." Gloria asked Hanlon his weight and recorded his response on the index card. She then gave him a vial containing 36 phendimetrazine tablets and asked for $20. Hanlon asked for a second vial, which Gloria gave him for another $20.

On June 3, 1983, Hanlon returned to Sugar's offices. Gloria asked him how many vials he wanted. Hanlon requested, and was given, three vials, each containing 36 phendimetrazine tablets, for $60.

On June 8, 1983, Hanlon returned to Sugar's offices. After Hanlon was weighed, Gloria gave him three vials, each containing 36 phendimetrazine tablets, in exchange for $60.

On September 19, 1983, Hanlon returned to Sugar's offices. Hanlon asked Gloria for, and was given, two vials of phendimetrazine tablets for $40. Hanlon then asked for "pink" pills. Gloria gave him 10 tablets, later identified as SBP plus CT [1] in return for $10. Hanlon asked for, and was given, an additional 10 pink pills in exchange for another $10.

---

1. SBP plus CT is a powerful combination barbiturate containing secobarbital, butabarbital, and phenobarbital, and was a Schedule III (later a Schedule II) barbiturate drug.

Hanlon did not see or speak to Dr. Sugar during any of his four visits to Sugar's offices after the first one. Moreover, he was not examined or questioned in any way when he sought a new medication—a depressant, even though he had simultaneously been provided with stimulants.

On September 23, 1983, the Government requested a warrant to search Sugar's offices. In support of that application, the Government submitted an affidavit of Agent Hanlon setting forth, *inter alia*, his experiences at Sugar's offices. Hanlon also alleged in that affidavit that he had received information from John P. Mulvey, a DEA Diversion Investigator[2] regarding Dr. Sugar's purchases of the controlled substances involved. In sum, Mulvey had informed Hanlon that Sugar purchased approximately 5,114,000 dosage units of anorectics between January 1, 1979 and March, 1983, which he had calculated were dispensed, on average, at the rate of nearly 8,000 dosage units per six-hour treatment day.

Mulvey had further informed Hanlon, based upon discussions with members of the medical profession and review of related medical literature and a consent decree setting minimum standards for the practice of bariatrics,[3] of the generally approved standards (*e.g.*, duration of usage, dosage, general treatment of patients) for dispensing anorectics in a bariatric practice. Hanlon summarized the proper practice as follows: "The use of anorectic drugs in a program of weight control is thus only approved for short periods of time, in a program involving restricted and specific amounts of anorexiants, and regular and extensive medical examination." Hanlon further asserted in his affidavit that he had been informed by an unnamed Sugar patient, that the informant and his wife had been Sugar's patients at various times over several years, and that the wife had regularly obtained $200 worth of phendimetrazine weekly over long periods of time.

The Government's application for a search warrant also contained a rough sketch of a floor plan, drawn by Hanlon, of the Sugar offices. The application was granted and a search pursuant to that warrant was conducted that day. Extensive evidence, including all of Dr. Sugar's books, records, data, and patient files were seized.

On September 6, 1984, a seven count indictment was handed up charging Sugar, Reinhardt, and Vamos with one count of conspiracy to distribute the controlled anorectics, five counts of distributing phendimetrazine (one count for each calendar year 1979 through 1983), and one count of furnishing false and fraudulent material information in applications, reports, records and other documents required to be made, kept, and filed under the federal narcotics laws.

On December 13, 1984, a superseding indictment was handed up adding Retek as a defendant in all but two counts (the substantive counts relative to calendar years 1979 and 1980) and including one additional overt act regarding Retek's participation in the conspiracy, but in no other way changing the original indictment.

These motions ensued. The defendants seek a variety of relief in these motions. Defendant Sugar moves for the following relief: 1) dismissal of the indictment because it is insufficient as a matter of law, and because it is based upon insufficient evidence before the Grand Jury; 2) dismissal of the substantive counts (or consolidation into one count), because they are multiplicitous—charging one offense in several counts; 3) dismissal of the indictment because it was not returned by a fair, impartial, and informed Grand Jury (a) unless the members voting to return the indictment attended all sessions related to this

---

**2.** A Diversion Investigator is responsible for monitoring the various manufacturers, wholesalers, pharmacies, and doctors involved in the commerce of controlled substances, in order to detect the diversion of controlled drugs into illicit markets.

**3.** *United States v. Zwick*, 413 F.Supp. 113 (N.D. Ohio).

case and (b) owing to allegedly prejudicial remarks made by the prosecutor; 4) suppression of all evidence seized at Sugar's offices because (a) the warrant was unconstitutionally overbroad and exploratory; (b) the warrant was invalid because Hanlon's Affidavit was insufficient to establish probable cause, (c) the warrant was invalid because it was based on stale information; 5) suppression of all evidence seized from areas beyond the scope of the search warrant; and 6) exclusion, under Fed.R.Evid. 403, of any evidence regarding the quantity of controlled substances involved. Defendant Reinhardt moves, in relevant part, for the following relief: 1) dismissal of the indictment because there was insufficient evidence presented to the Grand Jury; 2) dismissal of the substantive counts because they are (a) multiplicious—charging one offense in separate counts, and (b) duplicitous—charging two or more separate offenses in one count; 3) severance of her trial from that of the other defendants, pursuant to Fed.R.Crim.P. 14; 4) a bill of particulars as to certain items, pursuant to Fed.R.Crim.P. 7(f); and 5) access to certain information regarding the constituency of the Grand Jury, including the minutes of grand jury proceedings, pursuant to Fed.R. Crim.P. 6(e)(3)(C)(i) and (ii). Defendant Reinhardt also joins in Sugar's motion to the extent it is not inconsistent. Defendant Vamos joins in Reinhardt's motion to the extent it is not inconsistent with her defense. Defendant Retek joins in the motions of Sugar and Reinhardt to the extent they are not inconsistent with his defense.

On January 22, 1985, a second superseding indictment was handed up. This indictment, in much greater detail than the two earlier indictments, charges the defendants with the following offenses: one count of conspiracy to distribute, outside the scope of professional medical practice, the three controlled substances involved herein; five counts of distribution, outside the scope of professional medical practice, of controlled substances (one each for a specific substance distributed to a named individual, noting the dosage units distributed); six counts of distribution, outside the scope of professional medical practice, of phendimetrazine (one each for dosage units recorded as, but never actually having been distributed to six named individuals); seven counts of distribution, outside the scope of professional medical practice, of SBP Plus (one each for dosage units recorded as, but never actually having been distributed to seven named individuals); three counts of distribution, outside the scope of professional medical practice, of phentermine (one each for dosage units recorded as, but never actually having been distributed to three named individuals); and eight counts of furnishing false and fraudulent material information in applications, reports, records and other documents required to be made, kept, and filed under the federal narcotics laws (one each for the records of eight named individuals indicating, falsely, the receipt of controlled substances).

No new motion papers were filed relative to this second superseding indictment. Since it is now the governing indictment in this case, defendants's motions will be addressed, to the extent that they are still applicable, with regard to this indictment.

## DISCUSSION

### —Motions to Dismiss—

#### 1. *Sufficiency of the Indictment*

Defendants argue that the indictment is too vague and ambiguous to adequately apprise them of the accusations they must be prepared to meet at trial and to protect against subsequent proceedings based on the same offenses. More specifically, they claim that several facts, such as times, instances, and circumstances, must accompany the general statutory description of the offense. Whatever may have been true with regard to the first two indictments, defendants' arguments are without merit as to the second superseding indictment.

Rule 7(c) of the Federal Rules of Criminal Procedure requires that an indictment "be a plain, concise and definite written statement of the essential facts constituting the offense charged." Compliance

with Rule 7(c) ensures the satisfaction of three constitutional rights. First, it satisfies the Sixth Amendment guarantee that in a criminal prosecution the accused shall be informed of the nature and cause of the accusation. Second, it protects the right of an accused to be free from double jeopardy, as guaranteed by the Fifth Amendment. Finally, it guarantees that the accused has been indicted by a grand jury, as required by the Fifth Amendment, for the offenses on which he is to be tried. *See, e.g., United States v. Abrams*, 539 F.Supp. 378, 384 (S.D.N.Y.1982). This third function is met by the requirement that an indictment contain some factual particularity, thus preventing the prosecution from filling in elements of its case with facts not presented to, or considered, by the grand jury. *Id.; see also United States v. Agone*, 302 F.Supp. 1258, 1261 (S.D.N.Y. 1969).

■ In testing the sufficiency of an indictment, two criteria are to be analyzed. These are as follows:

first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'" and, secondly, "'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' [citations omitted]"

*Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962) (*quoting Hagner v. United States*, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932)).

■ So tested, the second superseding indictment must stand. It is replete with particulars that adequately apprise the defendants of the specific charges against them. For example, Count II charges:

Between on or about May 25, 1983 and on or about September 19, 1983, in the Southern District of New York, Dr. Leo

Laszlo Sugar, Victoria Vamos, Gloria Reinhardt, and Nandor Retek, the defendants, unlawfully, intentionally and knowingly did distribute, outside the scope of professional medical practice, a Schedule III controlled drug substance, to wit, approximately 396 dosage units of phendimetrazine, to an undercover agent of the Drug Enforcement Administration.

There is no want of specificity in this charge. The defendants are apprised of the specific controlled substance they are alleged to have distributed, the amount allegedly distributed, the period of time during which it was allegedly distributed, and the identity of the recipient. The elements of the offense are further elucidated by the allegation that the distribution occurred "outside the scope of professional medical practice." The defendants have fair notice of the charges against them, and are adequately protected against any future charges from these transactions. Thus, the indictment is legally and factually sufficient under Rule 7(c).

### 2. Sufficiency of Evidence Before Grand Jury

Defendants also move to dismiss the indictment because the Grand Jury did not have sufficient evidence to return the indictment, or, in the alternative, for disclosure of the Grand Jury minutes in order to test the sufficiency of that evidence.[4] This motion must be denied.

■ As the Supreme Court has stated, "[a]n indictment returned by a legally constituted and unbiased grand jury, ... if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). Review of Grand Jury proceedings is, therefore, very limited. Absent a showing of "particularized need," this Court will not review the sufficiency or legality of the evidence before the Grand Jury. *Abrams*, 539 F.Supp. at 389. Likewise, the Court will not lift the

---

4. Sugar argues simply that there was insufficient evidence. Reinhardt, on the other hand, seeks disclosure of the Grand Jury minutes to make a general inquiry into the propriety of those proceedings.

veil of secrecy surrounding grand jury proceedings to permit inspection by the defendants of the grand jury minutes, absent the required showing of particularized need. *Id.,* 539 F.Supp. at 388–89; *cf. United States v. Percevault,* 490 F.2d 126 (2d Cir.1974) (reversing trial court order requiring pretrial disclosure of, *inter alia,* grand jury testimony of co-defendants as exceeding authority under Jencks Act, 18 U.S.C. § 3500).

■ Defendants have made no such showing of particularized need. Rather, Sugar baldly asserts that the evidence was insufficient and Reinhardt speculates that this is so. Such unsupported assertions and speculations are not sufficient to require an in-depth review of the evidence before the Grand Jury, which would delay these proceedings inordinately. As the Court stated in *Costello:*

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment.

350 U.S. at 363, 76 S.Ct. at 408–09.

Defendants argue that this may not have been "a legally constituted and unbiased grand jury" as required by *Costello.* Defendants claim that this grand jury was properly constituted only if the jurors voting to return the indictment were present at all sessions in which testimony was presented relating to this indictment. This argument is without merit.

Defendants cite two cases from the Central District of California which hold that an indictment may be returned only by twelve or more grand jurors who attended all relevant sessions. *United States v. Roberts,* 481 F.Supp. 1385 (C.D.Cal.1980); *United States. v. Leverage Funding Systems, Inc.,* 478 F.Supp. 799 (C.D.Cal.1979).

What defendants fail to reveal to this Court, however, is that those cases do not reflect the law in this Circuit. *See Leverage Funding Systems,* 478 F.Supp. at 802 ("This court cannot adopt the Second Circuit's view."). Moreover, defendants fail to reveal that those cases are no longer good law even in the Ninth Circuit. *See United States v. Leverage Funding Systems, Inc.,* 637 F.2d 645 (9th Cir.1980), *rev'g* 478 F.Supp. 799, *cert. denied,* 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981).

■ Quite simply stated, it is not required that the twelve or more jurors voting to return an indictment be in attendance when all the evidence is presented against an accused. *See United States v. Colasurdo,* 453 F.2d 585, 596 (2d Cir.1971), *cert. denied,* 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972). As Judge Learned Hand stated,

> [s]ince all the evidence adduced before a grand jury ... is aimed at proving guilt, the absence of some jurors during some part of the hearing will ordinarily merely weaken the prosecution's case. If what the absentees actually hear is enough to satisfy them, there would seem to be no reason why they should not vote.

*United States ex rel. McCann v. Thompson,* 144 F.2d 604, 607 (2d Cir.), *cert. denied,* 323 U.S. 790, 65 S.Ct. 313, 89 L.Ed. 630 (1944).

Like their speculation about the sufficiency of the evidence, defendants' attempt to engage this Court in an attendance-taking exercise is simply a delay tactic which cannot be countenanced: it would "bog down the court[ ] in a morass, a veritable jungle of speculation and conjecture." *Colasurdo,* 453 F.2d at 596; *see also Thompson,* 144 F.2d at 607 ("it would be an onerous and unnecessary innovation"). The grand jury herein was properly constituted.

Defendants argue that the grand jury was not unbiased because of allegedly improper comments by the prosecutor regard-

ing a witness's[5] exercise of her Fifth Amendment rights before the Grand Jury. In support of this argument, defendants cite several cases holding that comment *at trial*, before a petit jury, is impermissible. *Stewart v. United States*, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961); *Wilson v. United States*, 149 U.S. 60, 13 S.Ct. 765, 37 L.Ed. 650 (1893); *DeLuna v. United States*, 308 F.2d 140 (5th Cir.1962). Defendants have not, however, cited a single case, and the Court has been unable to find one, which holds that such comment before the grand jury is categorically impermissible.

On the other hand, the Ninth Circuit has held that it is not prejudicial for a grand jury to learn that a target would assert the Fifth Amendment privilege not to testify if called. *United States v. McLaughlin*, 663 F.2d 949, 951 (9th Cir.1981). I believe that this is the correct rule.

 It is permissible for a target to be called to testify before the Grand Jury, even where it is known that the target will invoke his right not to testify. *See, e.g., United States v. Winter*, 348 F.2d 204, 207–8 (2d Cir.), *cert. denied*, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965); *United States v. Wolfson*, 282 F.Supp. 772, 774 (S.D.N.Y.1967), *aff'd in part and rev'd in part on other grounds*, 437 F.2d 862 (2d Cir.1970); *cf. United States v. Dionisio*, 410 U.S. 1, 10 n. 8, 93 S.Ct. 764, 769 n. 8, 35 L.Ed.2d 67 (1973) (citing *Winter* with approval on this point). If a prosecutor may call a target who he knows will refuse to testify, I hold that a prosecutor may advise the grand jury that he expects such a witness to invoke his or her right not to testify, provided that no prejudicial comment is made regarding that exercise of rights. A review of the comments made in this case before and after the witness's testimony reveals no prejudicial comments warrant-

ing a finding that the grand jury was biased.[6]

 Accordingly, since the facially valid indictment was returned by a properly constituted and unbiased grand jury, and no particularized need has been shown, the Court will neither review the grand jury minutes nor disclose them to the defendants for the purpose of testing the sufficiency of the evidence before the grand jury, and will not dismiss the indictment on this ground.

### 3. *Multiplicity of Substantive Counts*

Defendants contend that the substantive counts of the indictment are multiplicitous, charging one offense in several counts. I do not agree.

 A single offense may not be charged in more than one count of an indictment, lest multiple punishments attach to the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment. It is, however, "the role of Congress to define crimes and to determine the appropriate punishment for these offenses." *United States v. Lartey*, 716 F.2d 955, 967 (2d Cir.1983); *see also Bell v. United States*, 349 U.S. 81, 82, 75 S.Ct. 620, 621, 99 L.Ed. 905 (1955). Thus, if Congress has defined the offenses charged as distinct and separable offenses, defendants may be charged for these offenses separately.

 It is clear that each individual transfer of controlled substances, outside the scope of professional medical practice, is a crime punishable separately under 21 U.S.C. § 841. *See Lartey*, 716 F.2d at 967; *see also United States v. Santore*, 290 F.2d 51, 70 (2d Cir.1959) (same as to predecessor statute), *aff'd in part and rev'd in part on other grounds*, 290 F.2d 74 (2d Cir. 1960) (*en banc*); *cf. Blockburger v. United States*, 284 U.S. 299, 301–303, 52 S.Ct. 180,

---

**5.** Now defendant Victoria Vamos.

**6.** The Court does not condone the characterization of the procedures as a "little charade;" nonetheless, this is not so prejudicial as to require dismissing the indictment as to other de-

fendants. The witness in question did not raise this as a ground for dismissal; therefore, as to that defendant the argument was waived. Fed. R.Crim.P. 12(f).

181, 76 L.Ed. 306 (1932) (two sales of controlled substance without proper markings, made to same person one day apart, chargeable as separate offenses). This is true even where the separate transfers are part of a continuous course of conduct. *Lartey*, 716 F.2d at 967. The offense of distribution of a controlled substance is not inherently a continuous offense, *compare In re Snow*, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (cohabitation with more than one woman), but rather an offense capable of commission *uno actu, i.e.,* in one isolated act. *See Blockburger*, 284 U.S. at 302–303, 52 S.Ct. at 181.

■■■■ Moreover, as charged, each substantive count is a separate offense. As indicated above, the original indictment charged five substantive counts of distribution, one for each calendar year 1979 through 1983. Defendants claimed that those charges divided a single transaction into multiple offenses. Assuming *arguendo* that the five year course of conduct could be considered a single transaction,[7] the division of charges into separate offenses for each calendar year did not create multiplicitous charges. As the Supreme Court noted in *Blockburger*, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182. Each count in the original indictment required proof of distribution in a different calendar year. *See Lartey*, 716 F.2d at 967. Likewise, the division in the second superseding indictment into offenses specific to substance and individual, rather than year of commission, is proper because the factual proof required is distinct for each count.

Accordingly, because each separate sale of a controlled substance is indictable separately and because the substantive counts, as charged, require proof of different facts for each count, defendants's contention that one offense is charged multiplicitously

in the twenty-one substantive offenses is without merit.

#### 4. *Duplicity of Substantive Counts*

■■■■ Defendant Reinhardt also contends that the substantive counts are duplicitous in that they charge more than one offense within each count. Reinhardt seems to be arguing that each count is duplicitous because it charges both possession with intent to distribute and actual distribution of a controlled substance. This argument is unavailing.

Although the statute, 21 U.S.C. § 841(a)(1), reads in the disjunctive, *i.e.,* it is violated by either possession with intent to distribute *or* distribution, the indictment reads in the conjunctive. This is "the standard form used to set out the means by which the single offense may be committed." *United States v. Viserto*, 596 F.2d 531, 538 (2d Cir.), *cert. denied*, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979). This "standard form" is a proper form, because "[a]n indictment may charge alternate ways of violating a statute in the conjunctive, and a conviction under such an indictment will be sustained if the evidence justifies a finding that the statute was violated in any of the ways alleged." *United States v. Astolas*, 487 F.2d 275, 280 (2d Cir.1973), *cert. denied*, 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974). Moreover, conjunctive pleading has been upheld for this specific statute, 21 U.S.C. § 841(a)(1). *See Viserto*, 596 F.2d at 539; *United States v. Orzechowski*, 547 F.2d 978, 986–87 (7th Cir.1976), *cert. denied*, 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977).

■■■■ This, however, does not necessarily dispose of the question whether these counts are duplicitous. Since each specific sale of a controlled substance may be charged as a separate offense, the charging of a series of sales to a single individual within a single count may be duplicitous. *Cf. Lartey*, 716 F.2d at 968 (question not reached because waived). This argument is not articulated by any of the defendants;

---

**7.** Since each sale could properly be considered a separate offense, and a separate transaction,

this is, I think, a flawed assumption to begin with.

nonetheless, Reinhardt raised the general question of duplicity, and the Government responded with arguments applicable to this unarticulated contention. The Court therefore addresses this question and finds that the counts are not duplicitous.

 A single count is not duplicitous merely because it contains several allegations that could have been stated as separate offenses. *See Cohen v. United States,* 378 F.2d 751 (9th Cir.), *cert. denied,* 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967). Rather, such a count is only duplicitous where the policy considerations underlying the doctrine are implicated. *See United States v. Margiotta,* 646 F.2d 729, 733 (2d Cir.1981), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983). Duplicitous charges are prohibited in order to insure a defendant notice of the charges against him, to insure that a unanimous verdict is reached on a particular offense, to assure appropriate sentencing, and to protect against double jeopardy in a subsequent prosecution. *See United States v. Murray,* 618 F.2d 892, 896 (2d Cir.1980). Those considerations are not implicated here. This is particularly true because the essence of the alleged offense is a continuing course of conduct, a practice of dispensing controlled substances illegally. *See United States v. Kelley,* 395 F.2d 727, 730 (2d Cir.), *cert. denied,* 393 U.S. 963, 89 S.Ct. 391, 21 L.Ed.2d 376 (1968).

Finally, the defendants are not prejudiced in any way by the Government's decision in this case to charge fewer offenses than it might have. Rather, they are benefitted by the obvious reduction in the maximum penalties they would otherwise face. *See Margiotta,* 646 F.2d at 733, *Cohen,* 378 F.2d at 754. Accordingly, the substantive counts are not duplicitous.

The motions to dismiss the indictment, therefore, are denied on all grounds.

### —Other Claims—

### *Other Grand Jury Abuse*

 An indictment may be dismissed for egregious prosecutorial misconduct before the grand jury. *See, e.g., United States v. Estepa,* 471 F.2d 1132 (2d Cir. 1972) (misleading use of only hearsay evidence); *United States v. Phillips Petroleum Co.,* 435 F.Supp. 610 (N.D.Okl.1977) (proceedings conducted out of presence of grand jury; failure to apprise jury of exculpatory evidence obtained during irregular proceedings out of their presence); *United States v. Gallo,* 394 F.Supp. 310 (D.Conn. 1975) (grand jury given only transcript of one witness's testimony without explanation that it was hearsay, that he was available for live testimony, and that transcripts themselves "were permeated with perjurious statements as to crucial, material events").

 Defendants argue that they are entitled to review the grand jury minutes to ensure that no such conduct occurred here. Apart from the one instance disposed of above, defendants allege no basis for their rank speculation that the grand jury proceedings may have been tainted. Accordingly, for the same reasons discussed regarding the sufficiency of evidence before the Grand Jury, the motion for disclosure of grand jury minutes is denied.

### *Severance*

Defendant Reinhardt, and defendants Vamos and Retek by virtue of their joinder in her motion, further moves for a severance and separate trial. Defendants speculate that evidence may be admissible as to some but not all of the co-defendants, thus in some way prejudicing the defense of those against whom the evidence is inadmissible. Moreover, the defendants argue that the jury may be confused by the different facts and charges, and that the weight of the evidence against some other defendant may impair the jury's ability to properly assess the sufficiency of the evidence against each defendant. Finally, defendants speculate that admissions of co-defendants may infect their right to a fair trial. These arguments are unavailing.

 The starting point of this analysis must be the propriety of joining these defendants in one indictment. Rule 8(b) of

the Federal Rules of Criminal Procedure provides, in relevant part, as follows:

> Two or more defendants may be charged in the same indictment ... if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

This requirement is clearly met here. All four defendants worked together in the same medical office, where, it is alleged, controlled substances were dispensed outside the proper scope of professional medical practice in enormous quantities. Each of the four defendants is alleged to have knowingly participated in this distribution scheme. Thus, joinder in this case was proper.

■ Rule 14 of the Federal Rules of Criminal Procedure provides in relevant part, that "[i]f it appears that a defendant ... is prejudiced by a joinder ... of defendants in an indictment ... or by such joinder for trial together, the court may ... grant a severance." Under this Rule, whether or not a severance is to be granted is within my discretion. *Opper v. United States,* 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954); *United States v. Ochs,* 595 F.2d 1247, 1260 (2d Cir.), *cert. denied,* 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed. 328 (1979).

Considerations of judicial economy weigh heavily in favor of a single trial in this case. The trial portends to last several weeks. Each defendant is involved in substantially all of the offenses charged.[8] *Compare United States v. Gilbert,* 504 F.Supp. 565, 571 (S.D.N.Y.1980) (severance granted where defendant "charged in relatively few counts of a complex [36-count] indictment"). Each of the moving defendants was apparently actively involved in the distribution of controlled substances and the records kept thereof. Presumably, therefore, the trial against each would last several weeks. The Court can scant afford to have its limited resources spread more thinly by the choice to try a lengthy trial

more than once. Moreover, the burden on the citizenry in providing a jury for more than one trial is substantial. A joint trial in this case would "conserve[ ] judicial resources, alleviate[ ] the burdens on citizens serving as jurors, and avoid[ ] the necessity of having witnesses reiterate testimony in a series of trials." *United States v. Lyles,* 593 F.2d 182, 191 (2d Cir.), *cert. denied,* 440 U.S. 972, 975, 99 S.Ct. 1537, 1545, 59 L.Ed.2d 789 (1979). Furthermore, a single trial will eliminate the delay occasioned by separate trials, serving the interests of the public, the government, and the defendants in a speedy trial. *See United States v. McGrath,* 558 F.2d 1102, 1106 (2d Cir.1977), *cert. denied,* 434 U.S. 1064, 98 S.Ct. 1239, 55 L.Ed.2d 765 (1978); *cf.* 18 U.S.C. § 3161. The interests of judicial economy and avoidance of delay are particularly implicated by a joint trial where, as here, "the crime[s] charged involve a common scheme or plan." *United States v. Girard,* 601 F.2d 69, 72 (2d Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979).

■ In light of the enormous benefits to a single trial in this case, defendants bear a heavy burden of persuading me that a joint trial would lead to substantial prejudice. *See United States v. Lord,* 565 F.2d 831, 839 (2d Cir.1977). Defendants must show that a joint trial will not only lessen their chances for acquittal, but will effectively deny them a fair trial altogether. *See Abrams,* 539 F.Supp. at 381; *see also United States v. Borelli,* 435 F.2d 500, 502 (2d Cir.1970), *cert. denied,* 401 U.S. 946, 91 S.Ct. 963, 28 L.Ed.2d 229 (1971). Defendants have not met this burden by merely speculating, as they do, about the varying weights of evidence and the existence of admissions by co-defendants. Accordingly, defendants will be tried together.

### Bill of Particulars

Defendants move further for a bill of particulars regarding a multitude of facts

---

8. Sugar, Reinhardt, and Vamos are named in all thirty counts. Retek is named in twenty-seven of the thirty counts.

related to the offenses charged. Defendants are not entitled to this relief.

██ A bill of particulars is not to be used merely as a wholesale discovery device. *See United States v. Leonelli*, 428 F.Supp. 880, 882 (S.D.N.Y.1977). Its purpose is to supplement an indictment where the charges are so general that they do not apprise a defendant of the specific acts of which he is accused. *Id.* The second superseding indictment cannot be faulted on this score. As discussed above, all the essential facts are now contained in the indictment; thus defendants cannot legitimately complaint that they are not apprised of the essential facts of the crimes charged.

██ In light of the specificity of the second superseding indictment, defendants's motion for a blunderbuss bill of particulars is denied.

### Suppression of Seized Evidence

As discussed above, on September 23, 1983, the Government applied for, and was granted, a search warrant permitting a search of "the medical offices of Dr. Leo Sugar, Ground Floor, 400 East 77th Street, New York, New York." The property sought, and to be seized, was described as

Evidence, fruits and instrumentalities of the crime of conspiracy to distribute a controlled drug substance, in violation of Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(A) & 846, said evidence, fruits and instrumentalities including but not being limited to phendimetrazine, phentermine HCL, and other controlled substances, drugs, chemicals, order forms for controlled substances, invoices, dispensing records, patient files, and other documents, records, papers, notes and materials, pertaining to the dispensing or prescribing of controlled substances, banking records, employee records and personnell [sic] files, monies, equipment, utensils, containers, safe deposit keys, property and goods constituting evidence, fruits and instrumentalities of conspiracy to distribute controlled substances.

The warrant was executed the same day. Extensive evidence, including all of Dr. Sugar's books, records, data, and patient files were seized. Defendants move to suppress the evidence seized, or for a hearing to determine whether suppression is warranted.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Supreme Court has interpreted this provision as requiring three things. They are as follows:

First, warrants must be issued by neutral, disinterested magistrates. [citations omitted] Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that "the evidence sought will aid in a particular apprehension or conviction" for a particular offense. [citation omitted] Finally, "warrants must particularly describe the 'things to be seized,'" as well as the place to be searched.

*Dalia v. United States*, 441 U.S. 238, 255, 99 S.Ct. 1682, 1692, 60 L.Ed.2d 177 (1979). Defendants attack the warrant herein as not satisfying the second and third requirements mentioned in *Dalia*.

### 1. Probable Cause

Defendants argue that the warrant was issued without probable cause because the information supporting the warrant was insufficient to establish probable cause and, in any event, was stale. These arguments are without merit.

██ Probable cause is a difficult term to define. Probable cause "imports a seizure made under circumstances which warrant suspicion." *Locke v. United States*, 11 U.S. (7 Cranch) 339, 348, 3 L.Ed. 364 (1813). The circumstances warranting suspicion however, need not be such as would satisfy some "finely-tuned standard" like beyond a reasonable doubt or by a preponderance of the evidence. *See Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317,

2330, 76 L.Ed.2d 527 (1983). They need not even support a *prima facie* showing of criminal activity. *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969). Rather, probable cause is shown when the issuing magistrate has before him sufficient information to establish "a *fair probability* that contraband or evidence of a crime will be found in a particular place." *Gates*, 103 S.Ct. at 2332. The issuing magistrate need not apply some rigid test, or require the presence of certain criteria before issuing a warrant. Rather, the magistrate should view the "totality of the circumstances" set forth in the supporting affidavits, including, but not hypertechnically restricted to, the "veracity" and "basis of knowledge" of persons supplying hearsay information. *Gates*, 103 S.Ct. at 2332; *see also Massachusetts v. Upton*, —— U.S. ——, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984).

■ Magistrate Gershon found that the materials submitted to her satisfied this standard. In reviewing her decision, I am not to conduct a *de novo* review of the evidence submitted to Magistrate Gershon. *See Upton*, 104 S.Ct. at 2088; *Gates*, 103 S.Ct. 2331. Rather, I must simply determine whether Magistrate Gershon was presented substantial evidence which would warrant her conclusion that a search would uncover evidence of wrongdoing. *See Upton*, 104 S.Ct. at 2088, *Gates*, 103 S.Ct. at 2331; *see also Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). In doing so, I give Magistrate Gershon's decision "great deference." *Spinelli*, 393 U.S. at 419, 89 S.Ct. at 591.

■ Viewed in this light, Magistrate Gershon's finding of probable cause and her issuance of a search warrant must be affirmed. There was "substantial evidence" before Magistrate Gershon that a crime was being committed at Dr. Sugar's offices, and that evidence of such could be found there. The supporting affidavit contained three distinct sources of evidence.

First, Hanlon related information obtained from John Mulvey, the DEA Diversion Investigator. That information included Mulvey's experience in the field. Moreover, Hanlon related Mulvey's knowledge, obtained from DEA records supplied by the Lemmon Pharmaceutical Company, regarding the enormous quantities of controlled substances purchased by Sugar. Mulvey calculated the distribution rate of these drugs to be approximately 8000 dosage units per six-hour treatment day. Mulvey further provided Hanlon with information regarding the proper dosage and treatment practices for the controlled substances involved, which he had obtained from discussions with members of the medical profession and a review of medical literature, including the American Medical Association's Drug Evaluation Handbook. Finally, Mulvey brought to Hanlon's attention the *Zwick* consent decree wherein it was stated that

the medical standards of practice ... is [sic] not met where they [anorectics] are dispensed and prescribed to a large number of patients as standard treatment, nor are they met by only taking the pulse, blood pressure, weight, stethoscopic examination of the patient, a five minute personal interview with the physician, a casual concern as to possible dependency or addiction of the patient to anorectic drugs, and the delivery of a recommended diet to the patient on any office visit.

Second, Hanlon apprised the magistrate of information received from an anonymous informant, a patient of Dr. Sugar's, regarding the experiences of the informant and his wife, another Sugar patient. The information indicated that the informant's wife had visited Sugar's office weekly, over long periods of time, spending an amount weekly to procure anorectics which would yield approximately 120 days worth of dosage units under proper standards.

Finally, Hanlon related his own experiences visiting Sugar's offices, in an undercover capacity, as a patient. Hanlon had received large quantities of anorectics, in a very short period of time, with very little (tantamount to non-existent) medical attention. Moreover, after a three month hia-

tus, Hanlon had returned to Sugar's offices four days before the search warrant application was filed. At that visit he again obtained controlled substances. This time he also received a new medication in addition to the anorectics. The use of the new medication is inconsistent with the use of the anorectics. Nonetheless, these substances were again dispensed without medical attention.

Thus, Magistrate Gershon had a great deal of information before her. She was given information regarding Mulvey's reliability and the bases of his knowledge. She had information regarding the bases of the informant's knowledge. Magistrate Gershon also had information from Hanlon regarding his reliability and the bases of his knowledge. She was apprised of the standards for conducting a proper medical practice in the field of bariatrics, and for dispensing anorectic drugs. Finally, she had substantial evidence, based on the enormous quantities dispensed by Sugar's offices generally and upon the individual treatment patterns of two patients, that Sugar was not conducting his practice according to those standards. In light of the substantial evidence before Magistrate Gershon, the totality of circumstances before her support the issuance of the search warrant in this case.

In support of defendants's argument that probable cause was lacking, they submit two affidavits: one from Robert Silverman, Assistant Director of the Bureau of Narcotics Enforcement of the State of New York; and one from Roseann Wilson, a Sugar patient. Mr. Silverman's affidavit assails Agent Hanlon's handling of the investigation. While the practice espoused by Silverman may be preferable, I do not find that Hanlon's tactics, or his affidavit relating his experiences to Magistrate Gershon, are so inherently suspect that his information should be disregarded. Magistrate Gershon could, and presumably did, properly rely on Hanlon's investigation and the information it uncovered. Ms. Wilson is purportedly the wife of the anonymous informant discussed in Hanlon's affidavit. In her affidavit, Wilson refutes the infor-

mation apparently provided by her husband. Assuming the accuracy of these statements, an after-the-fact discovery that some portion of the informant's statement is inaccurate does not negate the finding of probable cause viewing the totality of the circumstances before Magistrate Gershon. *See Gates,* 103 S.Ct. at 2335 n. 14.

■ The Court need not tarry long with defendants's further claims that the information before Magistrate Gershon was too "stale" to support the issuance of the warrant. Hanlon's information established a practice, continuing in nature, of dispensing controlled substances without proper medical attention. That practice apparently had been going on for several years by the time Hanlon began visiting Sugar's offices as a patient. The course of conduct, in a continuing enterprise, three months prior to the application for a warrant is not impermissibly stale. *See United States v. Perry,* 643 F.2d 38, 50 (2d Cir.) (three year old information, corroborated by recent information, not stale where ongoing practice involved), *cert. denied,* 454 U.S. 835, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981); *see also United States v. Beltempo,* 675 F.2d 472, 477 (2d Cir.) ("a 52 day lapse would not vitiate probable cause in an ongoing scheme"), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1353 (1982). Moreover, information was provided to Magistrate Gershon that was four days old. This was clearly not stale, and it further corroborated the three-month old information thus removing any arguable staleness from that information.

■ Finally, I reject defendant's claim that the omission of certain facts, arguably exculpatory, from Hanlon's affidavit warrant either suppression or a *Franks* hearing. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (hearing to test whether affidavit made in good faith or with knowledge of falsity or reckless disregard for truth). The fact that one individual, an undercover DEA agent, was unsuccessful in her attempt to obtain phendimetrazine from defendants does not de-

tract from the apparent wrongdoings at Sugar's offices. Nor does it in any way implicate Hanlon's regard for the truth.

Accordingly, Magistrate Gershon's issuance of the search warrant in this case was properly made upon a showing of probable cause.

### 2. Specificity of Warrant

Defendants argue further that the search warrant issued herein was "overly broad, exploratory, and constitutionally defective." Defendants liken the warrant here to a general warrant, which is unconstitutional. *See, e.g., Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). Defendant's arguments are without merit.

 The warrant must describe the things to be seized with "particularity." *Dalia,* 441 U.S. at 255, 99 S.Ct. at 1692. The fact that the warrant called for seizure of a broad array of items does not, in and of itself, prove that the warrant fails to meet this requirement of particularity. Where, as here, the criminal activity allegedly permeates an entire business, it is appropriate to seize all records of that business. *See National City Trading Corp. v. United States,* 635 F.2d 1020, 1026–27 (2d Cir.1980). This is true for medical practices, as well. *See United States v. Hershenow,* 680 F.2d 847 (1st Cir.1982).

 The warrant at issue describes with sufficient particularity the things to be seized. Moreover, "nothing is left to the discretion of the officer executing the warrant." *Marron v. United States,* 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). Accordingly, the warrant was properly issued by Magistrate Gershon, and the items

seized pursuant to the warrant will not be suppressed.[9]

### 3. Execution of Warrant

 Defendants argue further that the search was conducted, and items seized, outside the areas contemplated by the warrant. I do not agree.

The search warrant authorized a search of "the medical offices of Dr. Leo Sugar, Ground Floor, 400 East 77th Street." Defendants do not contend that items were seized from outside Dr. Sugar's medical offices. Nor do they contend that the description in the warrant fails to describe the place to be searched with sufficient particularity. Both contentions would be patently frivolous. *See National City Trading Corp.,* 635 F.2d at 1024–25. In *National City,* a warrant was upheld which authorized the search of an entire suite containing law offices and offices of the business suspected of criminal activity. The suite in that case, like the medical offices in this case, did not contain "identifiable separate subunits." *Id.,* at 1025.

Defendants seem to argue, however, that the term "medical offices" employed in the warrant is delimited by the rough sketch floor plan drawn by Hanlon and appended to the application for the warrant. This argument must be rejected. Agent Hanlon cannot reasonably have been expected to know about these rooms that are admittedly inaccessible to the public. Thus, some ambiguity in Hanlon's application is acceptable. The Court is only concerned with the " 'practical accuracy' of the description of the premises to be searched." *National City,* 635 F.2d at 1024 (*quoting United States v. Fitzmaurice,* 45 F.2d 133, 135 (2d Cir.1930)). Moreover, it is the search war-

---

**9.** Even if the warrant were defective, the search pursuant to that warrant would be upheld. *See United States v. Leon,* — U.S. —, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). There is no claim that Magistrate Gershon abandoned her function as a detached and neutral arbiter. Nor is there any claim that Agent Hanlon was dishonest. As discussed in text, I disagree with defendants's argument that Hanlon's omission from his affidavit of the other DEA agent's unsuccessful attempt to procure phendimetrazine was

reckless. I further find that the agents could have held "an objectively reasonable belief in the existence of probable cause." *Leon,* 104 S.Ct. at 3423. Insofar as defendants claim that the warrant was so broad as to preclude good faith reliance on it, the Court disagrees. *Leon,* 104 S.Ct. at 3422. Accordingly, the motions to suppress should be denied for this reason as well. *See United States v. Fama,* 758 F.2d 834, (2d Cir.1985).

rant, not an appendix to the affidavit, which governs the area to be searched. *See United States v. Johnson,* 541 F.2d 1311, 1315 (8th Cir.1976) ("the affidavit is neither part of the warrant nor available for defining the scope of the warrant").

The warrant in this case described the place to be searched "such that the officer[s] armed with" it could "with reasonable effort ascertain and identify the place intended." *Steele v. United States,* 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925). That place was described as "the medical offices of Dr. Leo Sugar." The search was conducted of those offices, and nothing else.

The motions to suppress evidence seized from Dr. Sugar's offices are, therefore, denied on all grounds.

### Exclusion of Evidence of Quantities of Controlled Substances

Defendant Sugar also moves, at this time, for an order precluding the Government at trial from introducing evidence as to the "vast amounts" of controlled substances distributed from his office, pursuant to Fed.R.Evid. 403. Rule 403 provides as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Sugar argues that the quantities of drugs involved "would tend to prejudice the defendant, confuse the jury, and waste the time of the Court." The Court does not agree.

This evidence is highly probative. The Government claims that Sugar operated, at least in part, a candy-store-like dispensation of controlled substances rather than a proper medical practice. Sugar is fully entitled under the law to dispense these drugs in the course of a proper professional medical practice. The quantity of drugs involved, and the rate of distribution, is, therefore, probative of the question wheth-

er Sugar was operating a proper medical practice or distributing these drugs beyond the scope of such a practice.

 To be sure this evidence "prejudices" Sugar. All relevant state evidence is prejudicial to a defendant. Rule 403 does not protect against this. Rule 403 only protects against "unfair" prejudice, or the admission of *unduly* prejudicial evidence. *See United States v. Dazzo,* 672 F.2d 284, 288 (2d Cir.), *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982). The probative value of this evidence, at least at this stage, appears to outweigh its prejudicial effect; therefore, it will not be excluded. Accordingly, the motion to exclude is denied.

In sum, defendants' omnibus motions are disposed of as follows: 1) motions to dismiss the indictment are DENIED on all grounds; 2) motions for disclosure of grand jury minutes are DENIED on all grounds; 3) motions for severance are DENIED; 4) motions for a bill of particulars are DENIED; 5) motion to suppress seized evidence is DENIED on all grounds; and 6) motion to exclude evidence of quantity is DENIED.

SO ORDERED.